UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

MARTIN LORENZO SEBASTIAN,      )
                               )
                  Petitioner,  )
                               )
            v.                 )      No. 2:26-cv-00324-JRO-MKK
                               )
SAMUEL OLSON, Field Office Director, )
Chicago Field Office, Immigration and )
Customs Enforcement, in his official )
capacity,                      )
MARKWAYNE MULLIN, Secretary, U.S. )
Department of Homeland Security, in his )
official capacity,             )
TODD BLANCHE, Acting Attorney  )
General of the United States, in his )
official capacity,             )
TODD M. LYONS, Acting Director of U.S. )
Immigration and Customs Enforcement, )
in his official capacity,      )
BRISON SWEARINGEN, Warden of Clay )
County Jail, in his official capacity, )
                               )
                  Respondents. )

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

The Immigration and Nationality Act ("INA") not only authorizes but requires the Executive to detain certain aliens without a bond hearing pending decisions on their removability. The main issue in this case is whether the Petitioner, Martin Lorenzo Sebastian, falls into the category of aliens subject to mandatory detention. He does under 8 U.S.C. § 1225(b)(2)(A). As such, his detention without bond pending removal proceedings does not violate the INA. Moreover, Petitioner's current detention does not violate the Fifth Amendment's

Due Process Clause.  The Court therefore **DENIES** his Petition for Writ of Habeas Corpus.  Dkt. [1].

## I.  BACKGROUND

### A.    Factual Background

The following alleged facts are not in dispute and the Court finds that they are true based on its review of the verified Petition, the answers to the Court's Order to Show Cause, and the accompanying documentary evidence.  *See* 28 U.S.C. § 2242; *id.* § 2243 ("The court shall summarily hear and determine the facts . . . ."); *id.* § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true . . . .").

Petitioner is a citizen of Guatemala.  Dkt. 1 at 5; Dkt. 13 at 2.  On or around May 17, 2022, at the age of 17, he entered the United States without inspection and was apprehended by U.S. Border Patrol.  Dkt. 1 at 5; Dkt. 13 at 2; Dkt. 1-2.  He was referred to the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") and released on his own recognizance into the custody of a family member.  Dkt. 1 at 6; Dkt. 13 at 2; Dkt. 1-3.  He was granted Special Immigrant Juvenile ("SIJ") Status in 2025, allowing him to apply for lawful permanent residency, but he has not done so.  Dkt. 1 at 7; *see* dkt. 20-2 at 3.  Petitioner has been living in Seymour, Indiana since his release on his own recognizance.  Dkt. 1 at 5–6.

On March 20, 2026, Petitioner was arrested by the Carroll County Sheriff's Department after a traffic stop for driving without a license.  Dkt. 1 at 7; Dkt. 13

at 2; Dkt. 1-1 at 3; Dkt. 13-1 at 6.  U.S. Immigration and Customs Enforcement ("ICE") officers subsequently placed a detainer on Petitioner and issued an I-200 warrant for his arrest.  Dkt. 1 at 7; Dkt. 13 at 2; Dkt. 13-1 at 8.  On March 22, 2026, ICE officers took Petitioner into custody.  Dkt. 1 at 7; Dkt. 13 at 2; Dkt. 13-1 at 5.  The Department of Homeland Security also initiated removal proceedings by issuing him a Notice to Appear ("NTA") on April 3, 2026.  Dkt. 1 at 7; Dkt. 13 at 2; Dkt. 1-4 at 2; Dkt. 13-1 at 1.  The NTA charges state that Petitioner is removable based on 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.")  and  8  U.S.C.  § 1182(a)(7)(A)(i)(I)  (lack  of  valid  entry documentation).  Dkt. 13-1 at 4.

At a hearing on May 12, 2026, Petitioner was ordered removed.  Dkt. 17 at 13; Dkt. 20-2 at 3.  He reserved his appeal, and his appeal deadline is June 11, 2026,[1] which has not yet passed.  Dkt. 17 at 13; Dkt. 20-2 at 4.

---

[1] Petitioner argues that this case is not moot because the order of removal is not yet administratively final.  Dkt. 17 at 13.  The Court agrees.  A removal order becomes administratively final thirty days after the order is issued, if no appeal is filed, or after the Board of Immigration Appeals affirms the order, if an appeal is filed.  8 U.S.C. § 1231(a)(1)(B); 8 U.S.C. § 1101(a)(47)(B); *see also* 8 C.F.R. § 1003.38(b).  Once the order becomes final, Petitioner's detention will be governed by 8 U.S.C. § 1231(a)(2)(A), which states that "[d]uring the removal period, the Attorney General shall detain the alien." *See Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021) (noting that the removal and detention period under § 1231 "begins when an alien is 'ordered removed,' and the removal order becomes 'administratively final'").  But here, thirty days have not yet passed after the order of removal was issued, and Petitioner has stated that he is preparing to appeal in any case.  Dkt. 17 at 13.  So the 90-day removal period specified by 8 U.S.C. § 1231(a)(1) has not been triggered, and until then, Petitioner is still being detained under 8 U.S.C. § 1225(b)(2)(A).  This Court therefore has jurisdiction to consider the petition.

Petitioner was detained at the Clay County Justice Center in Brazil, Indiana, when he commenced this habeas action.  Dkt. 1 at 7; Dkt. 13 at 2.  He names as Respondents Brison Swearingen, Sheriff of the Clay County Justice Center, Brazil, IN; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security; Todd Lyons, Acting Director of ICE; Samuel Olson, ICE Field Office Director for the Chicago Field Office; and Todd Blanche, Acting Attorney General of the United States.  Dkt. 1 at 4–5.

The Court ordered Respondents to show cause why the relief sought by Petitioner should not be granted.  Dkt. 9 at 2.  After the parties responded, the Court ordered the federal Respondents to supplement their response with additional information regarding Petitioner's SIJ status.  Dkt. 18.  Respondents filed a supplemental brief, and dkt. 20, and both parties supplemented the record, dkts. 19-1, 20-1, 20-2.

## B.    Statutory Background

As amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), two statutory provisions principally govern the detention of aliens pending their removal proceedings—8 U.S.C. § 1225 and 8 U.S.C. § 1226.  While Section 1225 mandates detention in all cases, Section 1226 permits the release of some aliens on bond.

Key to Section 1225 is its definition of "applicant for admission."  Section 1225(a)(1) defines an "applicant for admission" as an alien "who arrives in the United States" or who is "present in" the country but "has not been admitted."  8 U.S.C. § 1225(a)(1).  The Supreme Court has explained that "applicants for

admission fall into one of two categories"—"those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Section 1225(b)(1) requires the detention and "expedited removal" of certain applicants for admission. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108–09 (2020). An applicant is subject to expedited removal if he is "arriving in the United States" and determined by an immigration officer to be "inadmissible" because of fraud, misrepresentation, or lack of valid entry documentation. 8 U.S.C. § 1225(b)(1)(A)(i).[2] Upon such determination, the officer "shall order the alien removed from the United States without further hearing or review *unless* the alien indicates either an intention to apply for asylum . . . or a fear of persecution." *Id.* (emphasis added). Where an alien claims asylum, the immigration officer "shall refer" the alien to an asylum officer for an interview to determine whether he has a "credible fear of persecution." *Id.* § 1225(b)(1)(A)(ii), (B)(ii). Aliens determined to have a credible fear of persecution "shall be detained for further consideration of the application for asylum" in a standard removal hearing. *Id.* § 1225(b)(1)(B)(ii); *see Thuraissigiam*, 591 U.S. at 109 (citing 8 C.F.R. § 208.30(f)). Aliens determined to lack a credible fear of persecution are subject to expedited removal and shall be detained "until removed." *Id.* § 1225(b)(1)(B)(ii).

---

[2] "[C]ertain other aliens" are also subject to expedited removal, including any aliens "designated by the Attorney General" who have "not been admitted or paroled into the United States, and who [have] not affirmatively shown, to the satisfaction of an immigration officer, that [they have] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" for fraud, misrepresentation, or lack of valid entry documentation. 8 U.S.C. § 1225(b)(1)(A)(iii)(I)–(II).

Section 1225(b)(2) "is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by Section 1225(b)(1)." *Jennings*, 583 U.S. at 287.    With exceptions not relevant here, Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A) (emphasis added).   In other words, detention is mandatory pending "the usual removal process," which "involves an evidentiary hearing before an immigration judge" where "an alien may attempt to show that he or she should not be removed." *Thuraissigiam*, 591 U.S. at 108.

Section 1226(a), by contrast, more generally provides that, "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a) (emphasis added).  Section 1226(a) also permits the Attorney General to release an alien on "bond" or "conditional parole," unless the alien "falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289; *see* 8 U.S.C. § 1226(c)(1)(A)–(E). For those enumerated categories, detention pending removal is also mandatory.

## II.  DISCUSSION

Petitioner seeks release from detention while he awaits his removal proceedings because he contends he is detained pursuant to a recent, unlawful policy shift by Respondents.   Respondents rely upon Section 1225(b)(2)(A) to

6

detain Petitioner without a bond hearing pending his removal proceedings because they argue he is an "applicant for admission." Petitioner argues that Section 1226(a) governs his detention and that he not only has a right to a bond hearing but is entitled to immediate release. Dkt. 1 at 12–16, 20–21; *see also* dkt. 17 at 3. He also brings claims under the Fifth Amendment's Due Process Clause, alleging violations of substantive and procedural due process. Ultimately, he is not entitled to the relief he seeks.[3]

### A.    *Castañon-Nava* **does not control this case.**

As a preliminary matter, Respondents and the Petitioner discuss the Seventh Circuit's recent opinion in *Castañon-Nava v. U.S. Department of Homeland Security,* 175 F.4th 828 (7th Cir. 2026), *see* dkt. 13 at 14–15; dkt. 17 at 5, which includes a fulsome discussion of the Section 1225(b)(2)(A) issue presented in the petition. Respondents argue that the *Castañon-Nava* opinion confirms that the Seventh Circuit has yet to issue binding precedent resolving the scope of Respondents' mandatory detention authority under Section 1225(b)(2)(A). Dkt. 13 at 15. The Court agrees.

On the scope of the "government's ability to detain noncitizens pursuant to its authority under § 1225(b)(2)(A)," *Castañon*-Nava, 175 F.4th at 842, *Castañon-Nava* is a fractured 1–1–1 opinion. Judge Lee confronted the defendants' Section 1225(b)(2)(A) argument and disagreed with it, while

---

[3] Petitioner argues that the Court should not require exhaustion of administrative remedies in this case. Dkt. 1 at 8–9. Respondents do not argue exhaustion in their Returns to the Order to Show Cause, dkts. 11, 13, so the Court does not address the issue.

acknowledging that "his colleagues . . . believe that we should not reach this issue." *Id.* at 842–856 (Lee, J.).  Judge Pryor concluded that it was not necessary for the Court to "reach[] the merits of the Plaintiffs' argument that the Defendants' interpretation of 8 U.S.C. § 1225(b)(2)(A) is improper," declining to join that portion of Judge Lee's opinion and voting to resolve the case on other grounds.  *Id.* at 857 (Pryor, J., concurring in part and concurring in judgment); *see id.* at 860–863.  And Judge Kirsch concluded in his dissent that the defendants' reading of Section 1225(b)(2)(A) is correct.  *Id.* at 871–877 (Kirsch, J., dissenting).  The portion of the merits opinion in *Castañon-Nava* addressing the meaning and applicability of Section 1225(b)(2)(A) is, therefore, not a precedential holding of the Seventh Circuit,[4] and both Judge Lee's and Judge Kirsch's opinions are persuasive authority on this issue.  While the reasoning in these opinions does not arise from the procedural posture of this case (i.e., a habeas petition directly challenging the Respondents' application of Section 1225(b)(2)(A) to the petitioner), both warrant serious consideration.  The same is true of the many orders from this District that have deferred to Judge Lee's

---

[4] The Seventh Circuit's discussion of Section 1225(b)(2)(A) in its emergency stay order in *Castañon-Nava*, 161 F.4th 1048, is also not binding precedent, as Petitioner concedes. Dkt. 17 at 4.  And as the merits opinion in *Castañon-Nava* all but confirms, the stay order's discussion of Section 1225(b)(2)(A) is dicta because it was not essential to the resolution of the stay order or the merits.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 66–67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.").  Further, decisions from motions panels at the stay stage, even those directly on point, are "not entitled to the weight of a decision made after plenary submission" because they are "summary in character" and "made often on a scanty record." *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991).

reasoning in the *Castañon-Nava* stay opinion,[5] which mirrors his reasoning in his merits opinion and three other recent opinions from the Second, Sixth, and Eleventh Circuits.  *See Da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Alvarez v. Warden*, 175 F.4th 1258 (11th Cir. 2026).

Respectfully, and for the reasons explained below and in this Court's prior orders, *e.g.*, *Demir v. Noem*, No. 2:26-cv-00086-JRO-MKK, 2026 WL 706485, at *4 (S.D. Ind. Mar. 13, 2026), this Court reads Section 1225(b)(2)(A) in line with Judge Kirsch's merits opinion in *Castañon-Nava*, which is consistent with the reasoning of the Fifth and Eighth Circuits addressing the precise issue on the merits in habeas actions.  *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).[6]

---

[5] *See, e.g.*, *Alejandro v. Olson*, 817 F. Supp. 3d 672, 683 (S.D. Ind. 2025) ("The phrase 'seeking admission,' . . . means that a noncitizen must be actively 'seeking' 'lawful entry.'" (internal citation omitted)); *Campos Leon v. Forestal*, No. 1:25-cv-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sep. 22, 2025) ("Meanwhile, the respondents' contention that Mr. Campos Leon's detention is mandatory under § 1225(b)(2) is, at best, incomplete. Assuming for the sake of argument that Mr. Campos Leon is an 'applicant for admission,' the respondents has not explained how he is 'seeking admission' such that § 1225(b)(2) applies."). Opinions of other judges in this District do not bind this Court. *Trump v. CASA, Inc.*, 606 U.S. 831, 858 n.17 (2025) (citation omitted) ("[D]istrict court opinions lack precedential force even vis-à-vis other judges in the same judicial district.").

[6] *See also Rayo v. Olson*, No. 2:25-cv-2064-BHL, 2026 WL 594079 (E.D. Wis. Mar. 3, 2026); *Hernandez v. Olson*, No. 2:25-cv-1670-BHL, 2026 WL 161509 (E.D. Wis. Jan. 21, 2026); *Rodriguez v. Olson*, 814 F. Supp. 3d 945 (N.D. Ill. 2026) (Pacold, J.); *Ugarte-Arenas v. Olson*, No. 2:25-cv-1721-WCG, 2025 WL 3514451 (E.D. Wis. Dec. 8, 2025), *appeal docketed*, No. 26-1023 (7th Cir. Jan. 7, 2026); *Rojas v. Olson*, No. 2:25-cv-1437-BHL, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025), *appeal docketed*, No. 25-3127 (7th Cir. Nov. 25, 2025).

**B.     Petitioner is not entitled to a bond hearing because Section 1225(b)(2)(A) mandates his detention pending removal proceedings.**

Section 1225(b)(2)(A)'s plain terms require Petitioner's detention pending his removal proceedings.  When engaging in statutory interpretation, the Court "start[s] with the text of the statute to ascertain its plain meaning." *United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020) (internal quotation and citation omitted).  In determining a statute's plain meaning, the Court is guided by the statutory language at issue and the language and design of the statute as a whole.  *Id.* at 852.  Unless specifically defined, a statute's words are given their "ordinary, contemporary, and common meaning by looking at what they meant when the statute was enacted . . . ."  *Id.*

To start, Petitioner is an "applicant for admission."  The term is expressly defined in the statute as follows: "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed . . . an applicant for admission."  8 U.S.C. § 1225(a)(1).  While the definition of "applicant for admission" does encompass aliens who may have recently arrived at a port of entry or crossed the border, that definition is broader.  "[A]pplicant for admission" includes any unadmitted alien present in the United States no matter when they entered or how long they have been here.  *See Buenrostro-Mendez*, 166 F.4th at 502 ("Presence without admission deems the petitioners to be applicants for admission.").  There is no dispute that Petitioner is an alien who is present in

10

the United States and has not been admitted.   He is therefore deemed an "applicant for admission" under the statute.

As noted above, the detention of applicants for admission falls into one of two statutory categories—Section 1225(b)(1) or the "catchall" Section 1225(b)(2). *Jennings*, 583 U.S. at 287.  The Court has established that Section 1225(b)(1) does not apply to Petitioner.  *See* Section II.A, *supra.*  Section 1225(b)(2)(A) requires the detention of applicants for admission pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  Petitioner makes no argument that he is "clearly and beyond a doubt entitled to be admitted" to the country.  Thus, Section 1225(b)(2)(A) mandates his detention pending removal proceedings.  *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220, 229 (BIA 2025) (holding that immigration judge "lacked authority to hear" alien's bond request "because aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings").

Petitioner raises several arguments rejecting this straightforward application of Section 1225.   The Court does not find these arguments persuasive.

### 1.   "Seeking Admission"

First, Petitioner argues Section 1225(b)(2)(A)'s "seeking admission" language limits its applicability to aliens who, unlike himself, affirmatively seek

lawful entry into the United States. Dkt. 1 at 12–14; Dkt. 17 at 6–8. The Court disagrees.

This Court has previously determined that the statutory language and context confirm that there is no separate and independent "seeking admission" element to Section 1225(b)(2)(A). *See Demir*, 2026 WL 706485, at *4; *Singh v. Swearingen*, No. 2:26-cv-00167-JRO-MG, 2026 WL 847715, at *5 (S.D. Ind. Mar. 27, 2026). Read most plainly, the term "seeking admission" is simply a synonym for applying for admission. And applying for admission is a participial form of the noun "applicant for admission." *See Buenrostro-Mendez*, 166 F.4th at 502 ("The everyday meaning of the statute's terms confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'"); *Avila*, 170 F.4th at 1134 ("When a person applies for something, they are necessarily seeking it." (cleaned up)).

This plain language reading that *all* "applicant[s] for admission" are, by definition, "seeking admission" does not render superfluous the words "seeking admission" in Section 1225(b)(2)(A). Rather, because "applicant for admission" is expressly defined in the statute, it is best understood to qualify the broader meaning of "seeking admission." *Cf. United States v. Woodward*, 376 F.2d 136, 141 (7th Cir. 1967) (holding statutory terms "'alarm or disturb' . . . qualify the broader meaning of 'breach of the peace'" and are not superfluous). This makes sense, as one can also "seek[] admission" even when he is not at a port of entry or present in the United States. *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 741

(BIA 2012) (noting, for example, "an alien can 'again seek[] admission' . . . by applying for a visa at a consulate abroad").

Indeed, other provisions in Section 1225 demonstrate that all "applicant[s] for admission" are "seeking admission," not just those who recently arrived. Take Section 1225(a)(3), which provides that "[a]ll aliens . . . who are applicants for admission *or otherwise* seeking admission . . . shall be inspected by immigration officers."  The provision's use of "or otherwise" indicates that "'applicants for admission' are a subset of those 'seeking admission.'" *Buenrostro-Mendez*, 166 F.4th at 503; *see Avila*, 170 F.4th at 1135 n.4.  Consider too Section 1225(a)(5): "An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States . . . ." (emphasis added).  Notably, the provision refers to the purposes and intentions of "the *applicant* in seeking admission"—not "the arriving alien in seeking admission."   In other words, all "applicant[s] for admission" are necessarily "seeking admission," regardless of when they arrive.

What's more, Congress knew how to say "arriving alien" when it wanted to in Section 1225.  It did not need to qualify "applicant for admission" with a separate and independent "seeking admission" requirement to achieve that effect.  For example, Section 1225(b)(1)(A) explicitly limits its applicability to (1) "an alien . . . who is arriving," and (2) certain other unadmitted aliens who do not have two years of continuous physical presence in the United States. Tellingly, Section 1225(b)(2)(A) contains no such temporal limitation.  *See*

13

*Negrete Ramirez v. Noem*, No. 1:25-cv-00206-CMS, 2026 WL 251725, at *3 (E.D. Mo. Jan. 30, 2026) ("If Congress intended that an alien no longer is 'seeking admission' after some amount of time in the United States, it could have said so.").

Petitioner may find it strange that he could be "seeking admission" if he is already in the United States. But that is a feature of Section 1225, not a bug. The INA defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Petitioner never effected a *lawful* entry into the country. He was not admitted. In the eyes of the INA, he remains an "applicant for admission" knocking on the proverbial door—that is, "seeking admission." This is not a novel or even recent understanding of our immigration laws. In 2012, the Board of Immigration Appeals explained:

> In ordinary parlance, the phrase "seeks admission" connotes a request for *permission* to enter . . . . The problem, however, is that Congress has defined the concept of an "applicant for admission" in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission, or who have been brought in against their will under certain circumstances. . . . In other words, many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be "seeking admission" under the immigration laws.

14

*Matter of Lemus-Losa*, 25 I. & N. Dec. at 743 (emphasis in original).  Thus, the term "seeking admission" does not create an independent pre-requisite for mandatory detention under Section 1225(b)(2)(A).

### 2.      "Arriving Aliens"

Second, Petitioner argues he is not subject to mandatory detention because, broadly speaking, Section 1225 applies only to "those who have recently arrived at a border or port of entry."  Dkt. 1 at 13; *see id.* at 11 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018)).  Petitioner argues he is not subject to mandatory detention because, broadly speaking, Section 1225 applies to "arriving" aliens, not people "who have lived in the United States for years and who were apprehended while residing within the United States."  Dkt. 1 at 14. He says he is not an "arriving alien," as he has been in the country since May 2022.  *Accord Mohammed v. Olson*, No. 1:25-cv-02404-TWP-MKK, 2025 WL 3541819, at *4 (S.D. Ind. Dec. 10, 2025) ("Considering § 1225 as a whole demonstrates that the most natural meaning of § 1225 is that it applies to 'arriving' noncitizens attempting to enter the United States.").

General characterizations of a statute's overall purpose, however, cannot substitute for its specific and plain words.  *See Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012) ("[E]ven the most formidable argument concerning the statute's purposes could not overcome the clarity . . . in the statute's text.").  As this Court discussed in a prior Order, Section 1225 concerns "applicant[s] for admission," which is a clearly defined term that includes but is not restricted only to arriving aliens or other recent border crossers.  *Demir*, 2026 WL 706485, at *5.

15

The Supreme Court did not hold otherwise in *Jennings v. Rodriguez.* That decision repeatedly stated that it was summarizing Sections 1225 and 1226 in "general" terms. *See Jennings,* 583 U.S. at 287 ("That process of decision *generally* begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." (emphasis added)); *id.* at 288 ("Section 1226 *generally* governs the process of arresting and detaining [aliens inside the United States] pending their removal." (emphasis added)).  *Accord Buenrostro-Mendez,* 166 F.4th at 505; *Avila,* 170 F.4th at 1136–37.

Granted, it is beyond question that Section 1225 applies to "arriving aliens." Section 1225, however, does not apply *only* to arriving aliens but to all non-admitted aliens present in the country, regardless of when they arrived. Any argument based on how this statute applies in many or even most cases does not tell us anything about what it means in every case, and specifically, nothing about what it means when applied to the facts before the Court today.

### 3.   1225 Versus 1226

Third, Petitioner argues that Section 1226, not Section 1225(b)(2)(A), applies to "people who entered without inspection and were apprehended inside the United States." Dkt. 1 at 16. Petitioner argues that *all* aliens arrested and placed in removal proceedings are entitled to a bond hearing under Section 1226(a) provided they have not committed certain criminal offenses listed in 8 U.S.C. § 1226(c). Dkt. 1 at 15–16. This argument both overlooks the text of Section 1225(b)(2)(A)—stating the applicant for admission "shall be detained" for

16

removal proceedings—and misunderstands the provision's relationship with Section 1226(a).

"[I]t is a commonplace of statutory construction that the specific governs the general[,]" especially when construing comprehensive statutory schemes—like the INA—that are often interspersed with "specific solutions" to "specific problems." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) and *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)). "The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one." *RadLAX Gateway Hotel*, 566 U.S. at 645. "[T]he canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one." *Id.*

Here, the INA contains a general provision—the Attorney General may release most ICE arrestees on bond, 8 U.S.C. § 1226(a)—and a specific provision—every "applicant for admission" must be detained without a bond hearing, 8 U.S.C. § 1225(b)(2)(A). The specific is the exception to the general, and it applies to Petitioner in this case. *Accord Rodriguez v. Olson*, 814 F. Supp. 3d 945, 958 (N.D. Ill. 2026) (applying general/specific canon to enforce Section 1225(b)(2)(A) over Section 1226(a)); *Ayala v. Harper*, No. 1:26-cv-204-CLM-GMB, 2026 WL 501113, at *8 (N.D. Ala. Feb. 23, 2026) (same).

17

Applying the general/specific canon here is consistent with the plain text and structure of Section 1225 and 1226. Section 1226(a) is permissive: "[A]n alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." (emphasis added). In other words, the Executive is free to exercise its discretion in how it executes the provisions of Section 1226 provided it does so within the bounds of Section 1225(b)(2)(A)'s clear mandate to detain "applicants for admission" pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." Enforcing that more specific mandate of Section 1225(b)(2)(A) does not render any of Section 1226 superfluous as to the Petitioner. It harmonizes the two provisions. At any rate, a "preference for avoiding surplusage constructions is not absolute," especially when the general/specific canon better harmonizes the apparently conflicting statutory provisions. *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004); *RadLAX Gateway Hotel*, 566 U.S. at 645; *see also Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) ("Sometimes the better overall reading of the statute contains some redundancy."); *see also Castañon-Nava*, 175 F.4th at 877 (Kirsch, J., dissenting) ("The government's interpretation of § 1225(b)(2)(A) does not make the Laken Riley Act superfluous, and any overlap is understandable given that Congress passed the Act 'at a time when the Executive was still declining to exercise its full enforcement authority [under § 1225].'" (alteration in original) (quoting *Buenrostro-Mendez*, 166 F.4th at 505)).

18

### 4.    Past Practice

Petitioner also argues that Respondent's application of Section 1225(b)(2)(A)'s mandatory detention provision not only to recent arrivals but also to unadmitted aliens already in the country like himself is contrary to "decades of agency practice."  Dkt. 1. at 3; *see id.* at 16.  However, the Court takes seriously its independent duty to interpret the law as written, regardless of an agency's past practice.  And "in cases where [a court's] own judgment . . . differ[s] from that of other high functionaries," the Court is "not at liberty to surrender, or to waive it.'"  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (quoting *United States v. Dickson*, 40 U.S. (15 Pet.) 141, 162 (1841) (Story, J.)).  Past practice aside, Respondent's interpretation of "seeking admission" is not entirely novel.  *See Matter of Lemus-Losa*, 25 I. & N. Dec. at 743.

### 5.    Petitioner's Special Immigrant Juvenile Status

Petitioner also argues that Respondents erroneously contend he "was present in the United States without being admitted or paroled."  Dkt. 17 at 8 n.4.  Instead, he argues that because of his Special Immigrant Juvenile ("SIJ") status he is "deemed to have been 'paroled' into the United States by statute," namely 8 U.S.C. § 1255(h)(1). Dkt. 17 at 7–8. Further, he argues that he cannot be treated similarly to recent arrivals because SIJ status "can only be acquired by noncitizens who are already present in the country by definition."  *Id.*  These

19

arguments are misplaced. Petitioner's SIJ status does not alter Respondents' mandatory detention authority under Section 1225(b)(2)(A).

First, Petitioner incorrectly states the legal significance of his SIJ status. In relevant part, SIJ status allows those who entered the country as minors without inspection and admission or parole to apply for an adjustment of their immigration status to lawful permanent residency. Section 1255(a) addresses this process and plainly states that only those who are admissible—*i.e.*, "inspected and admitted or paroled"—may seek a change of status. *E.g.*, *Soni v. Jaddou*, 103 F.4th 1271, 1272 (7th Cir. 2024) ("eligibility for a visa depends on admissibility to this nation"); *Malewski v. Holder*, 475 F. App'x 635, 636 (7th Cir. 2012) ("to be eligible for adjustment of status, the applicant must first demonstrate that he is admissible"). Those enter the United States as minors without inspection—like Petitioner—and are not admitted or paroled do not qualify to seek a change of their status. But if they—like Petitioner—obtain SIJ status under 8 U.S.C. § 1101(a)(27)(J), then Section 1255(h)(1) says they "shall be deemed, for purposes of subsection (a) [that is, Section 1255(a)], to have been paroled into the United States," thereby making them eligible to seek change of status under Section 1255(a). *See also Special Immigrant Status*, 58 Fed. Reg. 42843-01 (Aug. 12, 1993).

Here, Petitioner obtained SIJ status and thereby became eligible to seek adjustment of status under Section 1255(a) based on Section 1255(h)(1)'s "deemed" paroled provision. Dkt. 19-1 at 2. But Section 1255(h)(1) plainly does not grant parole to SIJ status holders for *all* purposes, only "for purposes of

20

subsection (a)," that is for purposes of seeking a change of status.  Accordingly, he is still eligible for removal as an inadmissible alien.  *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 433 (3d Cir. 2023) ("The plain language of [Section 1255(h)] applies the 'deemed to have been paroled' language *only* to subsection (a) and no other provision of the INA.").

Second, Petitioner's SIJ status does not take him outside the plain meaning of Section 1225(b)(2)(A), as he contends.  Dkt. 17 at 7–8.  He is still an "applicant for admission" because he "a[n] alien present in the United States who has not been admitted."  As discussed above, there is no separate "seeking admission" requirement for mandatory detention of all applicants for admission pending removal under Section 1225(b)(2)(A).  And it makes no difference whether Petitioner was ultimately detained at the border as an arriving alien or in the interior of the country when removal proceedings commenced.  As other courts have found in similar contexts, "[t]he fact that petitioner has been given special immigrant juvenile . . . status has no effect on ICE's statutory and regulatory authority to detain him."  *Vasquez v. Moniz*, 788 F. Supp. 3d 177, 181 (D. Mass. 2025) (affirming DHS's mandatory detention authority under Section 1225(b)(1)(B)(iii)(IV) and denying habeas relief).

* * *

Stepping back to consider the big picture, Petitioner's perspective on the meaning of Section 1225(b)(2)(A) necessarily implies that aliens who evade inspection and detention at a port of entry enjoy the privilege of a bond hearing while those who submit to inspection upon first arrival do not.  As the Fifth

21

Circuit explained, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) aimed to "reduce th[at] incongruity." *Buenrostro-Mendez*, 166 F.4th at 499; *see also Avila*, 170 F.4th at 1135–36; *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (explaining IIRIRA "did away with" the "anomaly whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully"). Nothing in the text of the statute suggests that the privilege of a bond hearing is based upon the arbitrary standard of avoiding inspection and living in the United States for an unspecified time.

Granting habeas relief to Petitioner on the premise that ICE does not have the statutory right to detain him—despite his non-admitted status—leads to the conclusion that the force of Section 1225(b)(2)(A) arbitrarily dissipates with time. And Petitioner essentially argues this point. Dkt. 1 at 14; Dkt. 17 at 2. That is plainly not what Congress meant when it wrote "seeking admission" in Section 1225(b)(2)(A) or enacted the bond hearing provision in Section 1226(a). It is also inconsistent with Congress's IIRIRA amendments and encourages the "perverse incentive to enter at an unlawful rather than a lawful location" against which the Supreme Court has warned. *Thuraissigiam*, 591 U.S. at 140 ("Like an alien detained after arriving at a port of entry, an alien like respondent is 'on the threshold.' The rule advocated by respondent and adopted by the Ninth Circuit would undermine the 'sovereign prerogative' of governing admission to this country and create a perverse incentive to enter at an unlawful rather than a lawful location." (citations omitted)).

22

In sum, Petitioner is subject to mandatory detention pending removal proceedings under the plain terms of Section 1225(b)(2)(A). As such, Respondents have not violated Section 1226(a) by detaining him without a bond hearing. As he is not eligible for a discretionary bond hearing, the Court does not address his argument that he is entitled to immediate release.[7]

## C.   Petitioner's current detention does not violate the Fifth Amendment.

Finally, Petitioner argues his current detention violates the Fifth Amendment's Due Process Clause. Dkt. 1 at 21–25. He argues that it violates both substantive and procedural due process. It does not.

### 1.   Substantive Due Process

Petitioner argues that his detention does not satisfy substantive due process under the Fifth Amendment, because "Respondents have not made any claim that Petitioner presents a flight risk or a danger to the community," and substantive due process requires that "a noncitizen's detention must be tied to

---

[7] Petitioner also explains that he is a member of a "bond eligible" class certified by the United States District Court for the Central District of California, which that court declared "are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under § 1225(b)(2)." *Maldonado Bautista v. Noem*, No. 5:25-cv-1873, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025). But Petitioner recognizes that the *Maldonado Bautista* declaratory judgment order is stayed by the Ninth Circuit pending appeal and thus not a basis for relief in this action. Dkt. 1 at 19–20; *Bautista v. U.S. Dep't Homeland Sec.*, Case No. 26-1044, dkt. 17 (9th Cir. Mar. 31, 2026). In any event, the Court observes that the Supreme Court's recent decision in *Trump v. J.G.G.*, 604 U.S. 670 (2025), may "forbid [it] to grant [Petitioner] relief based on *Maldonado Bautista's* declaratory judgment." *Bazurto v. Olson*, No. 1:26-cv-00122-SEB-CSW, 2026 WL 285993, at *2 n.1 (S.D. Ind. Feb. 3, 2026) (explaining that the Supreme Court in *J.G.G.* "vacated a preliminary injunction barring the removal of a provisionally certified class of aliens and held that class members must pursue any relief in habeas actions in the districts where they were confined" (citing *J.G.G.*, 604 U.S. at 673–74).

23

flight risk or a danger to the community." Dkt. 1 at 26 (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).

As the Seventh Circuit recently held, "[a]rticulating a substantive due process right requires 'a careful description of the asserted fundamental liberty interest' claimed to be violated." *Doe v. Sloan*, 172 F.4th 955, 958 (7th Cir. 2026) (cleaned up) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997), and citing *Christensen v. Cnty. of Boone*, 483 F.3d 454, 462 (7th Cir. 2007)). The "specific interest must be grounded in '[o]ur Nation's history, legal traditions, and practices.'" *Id.* (quoting *Glucksberg*, 521 U.S. at 721). The Seventh Circuit cautioned that "the 'scope of substantive due process is very limited,' and that judges should be 'reluctant to expand the concept.'" *Id.* (quoting *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019)).

Petitioner has not carefully described the fundamental liberty interest at issue. Under similar circumstances, the Seventh Circuit has held that Petitioner's liberty interest "is not liberty in the abstract, but liberty *in the United States* by someone no longer entitled to remain in this country but eligible to live at liberty in his native land." *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999); *cf. Bolante v. Keisler*, 506 F.3d 618, 621 (7th Cir. 2007) (denying Eighth Amendment bail to alien subject to removal because he was not lawfully admitted to the United States). Accordingly, his liberty interest is constitutionally circumscribed by the procedures mandated by the INA, "[g]iven the sweeping powers Congress possesses to prescribe the treatment of aliens." *Parra*, 172 F.3d at 958 (citing *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)); *accord Rodriguez,*

24

814 F. Supp. 3d at 963 ("Under *Parra*, because petitioner does not attempt to argue that he is 'entitled to remain in' the United States, his private interest in release pending his removal proceedings is relatively minimal."). The Seventh Circuit's narrower view of Petitioner's liberty interest as an alien who is not lawfully present was upheld by the Supreme Court in *Demore*. 538 U.S. at 516 (favorably citing *Parra*).

Petitioner is free to live at liberty without detention, just not in this country. Accordingly, Petitioner's detention does not violate substantive due process. *E.g., Tapia v. Mullin*, --- F. Supp. ---, No. 1:26-cv-01321-AD, 2026 WL 1657240, at *4 (W.D. Tex. June 8, 2026) ("The right for an alien to be released into the interior of the United States during his immigration proceedings is not one of those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." (cleaned up)).

### 2.    Procedural Due Process

Petitioner also states a procedural claim, arguing that the Due Process Clause entitles him to an opportunity to prove that he is neither a flight risk nor a danger to the community. Dkt. 1 at 27–28. However, the Supreme Court has held that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003). That holding settles the issue. And this Court reached the same conclusion in a previous action that is materially indistinguishable from this case. *Demir*, 2026 WL 706485, at *7–8.

Petitioner argues that due process requires the Government to "justify Petitioner's ongoing detention by clear and convincing evidence," including an individualized showing that "the detainee poses a danger or flight risk." Dkt. 1 at 23–24; *see* Dkt. 17 at 11–13. But the Supreme Court already anticipated this objection and rejected it: "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528. Applied to Petitioner, this means that Respondents do not have to justify mandatory detention on a case-by-case basis. Respondents may enforce the policy Congress already adopted when it enacted the mandatory detention provision in Section 1225(b)(2)(A) without an individualized bond hearing.

Petitioner cites *Zadvydas* to support his argument, dkt. 1 at 25–26, but that case is distinguishable. There, the Supreme Court addressed whether a post-removal-period detention statute authorized potentially indefinite detention. In construing the statute to reject that conclusion, the Supreme Court specifically distinguished the due process issues inherent in the petitioner's indefinite detention from "detention pending a determination of removability," which has an "obvious termination point." *Zadvydas*, 533 U.S. at 697. Petitioner's detention here is a detention pending removal proceedings. Thus, it does not implicate the due process concerns addressed in *Zadvydas*.

And even in cases like *Zadvydas*—where the Supreme Court held that removal is "no longer practically attainable," *id.* at 690, thereby eliminating the premise for detention pending removal—detention for up to six months was

26

presumptively constitutional, *id.* at 701.  Petitioner has been detained by ICE pending his removal proceedings for just over two months.  Accordingly, Petitioner's current detention by ICE does not violate his due process rights.

### III.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner Martin Lorenzo Sebastian's Petition for Writ of Habeas Corpus, dkt. [1], and **DISMISSES** this case with prejudice.  Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 6/10/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email